IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

**BETHANY ARMSTRONG,**

    **Plaintiff,**

vs.

**CORECIVIC, INC.**

    **Defendant.**

CASE NO. _____

## COMPLAINT

COMES NOW Plaintiff Bethany Armstrong ("Ms. Armstrong" and/or "Plaintiff"), by and through her undersigned counsel, and states as follows for her Complaint:

### INTRODUCTION

1. This is an action to vindicate a former employee's constitutional rights related to an unreasonable invasive and humiliating search at the Metro Davidson County Detention Facility in Nashville, Tennessee, a governmental detention facility managed by CoreCivic, Inc. ("CoreCivic"). Defendant through its acts and omissions and pursuant to a custom carrying the force of law, required Plaintiff to expose her body parts to a Correction Officer to verify that she did not have contraband on her person. Defendants' conduct deprived Plaintiff of her constitutional rights to be free from an unreasonable search and seizure, equal protection of the laws, and the right against deprivation of liberty and privacy without due process of law. Defendants' conduct also violated the laws of the State of Tennessee. This lawsuit seeks to have the Defendants' strip-search policy declared unconstitutional. This lawsuit also seeks

compensatory damages and punitive damages for Defendants' unconscionable and callous disregard of Plaintiff's rights.

2. The Defendant, while serving as a government actor, has employed a uniform practice and procedure of unreasonably strip searching employees who work for the Metro Davidson County Detention Facility ("MDCDF"), without taking safeguards to ensure that a particular strip search is necessary and warranted (the "Illegal Strip Search Practice or Policy"). Upon information and belief, this uniform practice and procedure is, in part, derived from the written policies and procedures of the Defendant, and is implemented, employed and/or overseen by Defendant at the MDCDF.

3. A blanket policy of conducting unreasonable strip searches of employees under the guise that a K-9 dog got a narcotics alert is a violation of the employee's constitutional rights against unreasonable searches and seizures.

4. The Illegal Strip Search Practice or Policy implemented, overseen, and/or employed by Defendant compels and/or compelled all new employees, such as Plaintiff, to undergo the indignities, humiliation and embarrassment of an unreasonable strip search upon the guise that a K-9 dog got a narcotics alert.

5. CoreCivic is a government actor and operates under color of state law in carrying out the function of operating the Metro Davidson County Detention Facility under a contract with Metropolitan Davidson County, which is a local government. The operation of jails is traditionally the exclusive prerogative of the government. When private organizations, such as Defendant CoreCivic, contract to perform such governmental functions, those entities and its agents are liable for violations of federal and state created rights under 42 U.S.C. § 1983, the United States

Constitution, and under state tort law. For the purposes of this action, Defendant CoreCivic stands in the shoes of the Metropolitan Davidson County on whose behalf it has been hired to operate, manage, and oversee the Metro Davidson County Detention Facility.

## JURISDICTION

6. This Court has jurisdiction over this action under the provisions of 28 U.S.C. § 1331 and 1343 and 42 U.S.C. § 1983. Plaintiff seek to obtain compensatory damages, punitive damages and attorneys' fees, for acts committed under color of state law in violation of her rights as a citizen of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. § 1981 and 1983.

7. Venue is proper under 28 U.S.C. § 1391(e)(2) because the events giving rise to Plaintiff's claims occurred in this judicial district. Defendant CoreCivic operates at the MDCCF that is located within the geographic region covered by this Court.

## DEFINITIONS

8. The "Illegal Strip Search Practice or Policy" refers to the Defendants' written, unwritten, and/or de facto policy or practice of forcing employees to submit to unreasonable strip searching or in the alternative be terminated by Defendant.

## PARTIES

9. Plaintiff Bethany Armstrong ("Ms. Armstrong") is an adult female who resides in Nashville, Davidson County, Tennessee.

10. Defendant CoreCivic is a Maryland corporation headquartered in Tennessee, with its principal place of business located at 10 Burton Hills Boulevard, Nashville, Tennessee. CoreCivic

is a for-profit, publicly traded real estate investment trust that "specializes in owning, operating, managing prisons and correctional facilities" and has referred to itself as "the nation's largest owner of partnership correction and detention facilities and one of the largest prison operators in the United States." CoreCivic's website boasts that the corporation operates more than 60 detention facilities, jails, and prisons holding more than 90,000 beds. CoreCivic operates under the full authority of the State of Tennessee pursuant to Tenn. Code Ann. §§ 41-24-101, et seq., and/or 41-8-101, *et seq.,* At all times relevant to Plaintiff's Complaint, CoreCivic was acting under color of state law. CoreCivic is the entity charged by the State of Tennessee with authority to maintain the certain prisons, jails and detention centers and has a non-delegable duty to ensure that all persons and employees are protected by the Constitutions and laws of the United States and the State of Tennessee. Defendant CoreCivic is responsible for the implementation of policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this action. CoreCivic is licensed to do business in Tennessee and may be served through its registered agent, CT Corporation System, 300 Montvue Drive, Knoxville, Tennessee 37919-5546.

11. At all times relevant hereto, Defendant CoreCivic acted as the agent of the MDCDF under contract to manage/oversee the facility.

## FACTS

12. The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, prohibits local government and county officials, including the Defendant in this action, from performing unreasonable strip searches of employees.

13. Reasonable suspicion to conduct a strip search may only emanate from the particular circumstances antecedent to the search, such as the nature of the violation or crime charged, the particular characteristics of the person, and/or the circumstances of the search.

14. Upon information and belief, the Defendant has promulgated, implemented, enforced, carried out, and/or failed to rectify a written and/or de facto policy, practice or custom of uniformly and unreasonably strip searching employees simply because a K-9 dog alerted for the possible presence of contraband. This written and/or de facto policy made the strip search of Plaintiff part of a routine enforcement policy, practice and custom of Defendant.

15. The unreasonable strip search of Plaintiff was conducted in violation of the company's established policy No. 3-15.4(B)(3) which provides as follows:

> In cases where there is reasonable suspicion to believe an employee is under the influence, as defined in this policy, the Warden/Administrator or other official will notify the employee that he/she is required to submit immediately to reasonable suspicion testing. Upon making the necessary arrangements, the Warden/Administrator or other company official will escort the employee to and from the testing location and, if necessary, as determined by the test results, will provide and/or transportation home. Every effort will be made to conduct the specimen collection immediately following initial notification, preferably within fifteen (15) minutes of the notification. Prior to the collection, the Warden/Administrator, or other official, will provide to the employee a written statement describing the basis for the reasonable suspicion determination.

16. Despite the existing policy, the Defendant has a practice, custom and policy of circumventing Policy Number 3-15, then subjecting employees, such as Plaintiff, to unreasonable strip searches.

17. The policy also defines reasonable suspicion, in part, as:

> A belief that an employee is using or has used drugs or alcohol in violation of this policy, drawn from specific objective or articulable facts and reasonable inferences, and may be based upon the following, among other factors:

> Evidence that an employee is involved in the use. . . possession . . . of drugs while on duty or while on the employer's premises . . .. Policy number 3-15.3.

18. As a direct and proximate result of the unlawful and unreasonable strip search conducted pursuant to the de facto policy, the Plaintiff has suffered psychological pain, humiliation, and mental anguish.

## FACTS APPLICABLE TO THE PLAINTIFF AND TO DEFENDANT

19. On June 3, 2019, Plaintiff Bethany Armstrong ("Ms. Armstrong") began working for Defendant as a Corrections Officer at the MDCDF in Nashville, Tennessee.

20. Ms. Armstrong's first two weeks on the job consisted of classroom training sessions which began each morning at 7:00 a.m. and ended at approximately 4:30 p.m.

21. During the first two weeks, Ms. Armstrong did not have access to the general jail population.

22. During the training classes, Ms. Armstrong and other trainees were given copies of the company's various policies and procedures. In fact, Ms. Armstrong was given a copy of Policy Number 3-15.

23. On Friday, June 14, 2019, Ms. Armstrong arrived at work at approximately 6:45 a.m.

24. As she entered the work area leading to the classroom, Chief of Security, Officer Zen Daniels, stopped Ms. Armstrong and instructed her to go into another room.

25. Ms. Armstrong entered the room, and observed Chief Daniels, a lady holding a K-9 dog on a leash and a second female sitting in a chair.

26. Ms. Armstrong was about four to five feet from the K-9 dog, and the dog was calmly resting on the floor and did not make any movement towards Ms. Armstrong.

27. Chief Daniels instructed Ms. Armstrong to turn around and remove her jacket and Ms. Armstrong complied with the instructions.

28. Ms. Armstrong's back was turned, so she could not see what was happening.

29. Ms. Armstrong heard the lady say to the dog, "Come here boy." She also heard the lady snapping her fingers at the dog.

30. Ms. Armstrong could hear the dog breathing. Afterwards, Chief Daniels instructed Ms. Armstrong to sit down.

31. While she was sitting in the room, she observed Chief Daniels and the lady with the K-9 dog observe two more trainees.

32. Ms. Armstrong watched as the K-9 dog walked up to the two trainees, breathing and sniffing them. The two trainees were allowed to leave, but Ms. Armstrong was required to stay.

33. Chief Daniels then had Ms. Armstrong repeat the actions a second time. She again could not see what was going on.

34. Chief Daniels told Ms. Armstrong to sit down, which she did. Chief Daniels then got on the radio and asked for an experienced security officer.

35. Chief Daniels then asked Ms. Armstrong if she had anything on her he should know about. Ms. Armstrong responded, "No, sir."

36. Chief Daniels then sat her down again.

37. Chief Daniels then started playing with the dog. He then removed a cell phone from his pocket and the dog became highly excited and agitated.

38. The dog was so agitated, that it was difficult for the lady handler to calm him down. The dog started barking and trying to get to Chief Daniels.

39. Afterwards, a female officer came into the room and asked, "Where should I take her?"

40. At that time, the two trainees had returned to the room to get coffee, so they overheard the female officer's question and knew Ms. Armstrong was going to be searched.

41. The officer escorted Ms. Armstrong into a small bathroom.

42. Ms. Armstrong was asked to remove her shoes and socks, which she did.

43. Ms. Armstrong was then instructed to remove her shirt, pants, bra and underwear. Ms. Armstrong then realized that she was being forced to participate in a strip search.

44. Ms. Armstrong complied with the officer's instructions because she believed that she would be terminated if she refused.

45. At this point, Ms. Armstrong was feeling embarrassed, humiliated and emotionally stressed because she was naked and standing in front of a stranger who she may eventually encounter again during her career at the MDCDF.

46. After she removed all of her clothing, she was instructed to lift her breast, which she did.

47. She was then instructed to squat and cough three times with her back to the officer.

48. Ms. Armstrong began to recall a time when she suffered a miscarriage in a bathroom while squatting, so the strip search caused her additional emotional anguish and distress.

49. Ms. Armstrong could not see what the officer was doing behind her, but Ms. Armstrong felt that she was being violated and dehumanized.

50. The officer then shook out Ms. Armstrong's clothing, instructed her to put her clothes back on and told her to "go back to class."

51. Upon returning to the classroom, Ms. Armstrong was visibly upset, confused and distraught over the incident. She informed her supervisor of the incident.

52. Later that morning, she was instructed to report to the Warden's office. When she did, she met with the Warden and he apologized for the incident and told Ms. Armstrong the strip search never should have happened.

53. Ms. Armstrong managed to stay in the classroom all day and complete her training. She then returned to work on Monday, June 17, 2019, but was very uncomfortable and emotionally distressed.

54. The next day, June 18, 2019, when she returned to work, she was immediately removed from the classroom in the presence of her co-workers and given a letter from Warden Blair Leibach, which read as follows:

> During our K-9 search last week, the K-9 indicated a possible positive on contraband. On basis of this information you have been directed to submit to a reasonable suspicion drug testing per Policy 3-15.

55. Ms. Armstrong felt that she was being harassed and intimidated by the Defendant.

56. Ms. Armstrong left the premises and went to the Concentra Medical Center to be tested.

57. Ms. Armstrong's test results were negative for the presence of any contraband.

58. Ms. Armstrong felt that she was being harassed and she felt humiliated when she was removed from the classroom and sent for a drug test.

59. After completing the drug test, Ms. Armstrong did not return to the MDCDF, and eventually quit.

60. As a direct and proximate result of the unlawful and unreasonable strip-search conducted pursuant to Defendants' policy, practice and custom, Ms. Armstrong has suffered injuries.

61. In carrying out its contractual arrangements with the Davidson County government to maintain, supervise, manage and oversee the MDCDF, Defendant CoreCivic has served as a governmental actor for purposes of, among other things, liability under 42 U.S.C. § 1983 and the United States Constitution. The administration of a jail is an activity that is traditionally the exclusive prerogative of the government. The MDCDF which is operated by Defendant CoreCivic has all of the attributes of other jails that are publicly run by the government. Furthermore, by entering into an agreement that calls for Defendant CoreCivic to operate and manage the MDCDF (which has resulted in the imposition of the Illegal Strip Search Practice or Policy by Defendants), Metropolitan Davidson County government has affirmatively facilitated, encouraged, or authorized unlawful acts against its employees. For purposes of this action, Defendant is a governmental actor who stand in the shoes of the government on whose behalf it is operating the MDCDF.

62. Upon information and belief, Defendant CoreCivic is responsible for the screening, hiring, training, monitoring, and supervision of its corrections officers and other employees at the MDCDF. Defendant is directly responsible for the policy making activities at the MDCDF, and implemented, enforced, and carried out the Illegal Strip Search Practice or Policy.

# CAUSES OF ACTION
## COUNT I
## MONETARY DAMAGES FOR VIOLATIONS OF 42 U.S.C. § 1983

63. Plaintiff incorporates by reference and re-allege each and every allegation stated in the preceding paragraphs.

64. The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects citizens from unreasonable searches by law enforcement officers, and prohibits officers from conducting strip searches of individuals absent particularized reasonable suspicion that the individual in question has weapons, drugs, or other contraband.

65. The actions of Defendant detailed above violated the Fourth and Fourteenth Amendment rights of Plaintiff.

66. The Defendant's administration and enforcement of the Illegal Strip Search Policy was the direct causal link between Defendant and the constitutional injuries complained of herein. As such, the Defendant is directly liable for the damages of Plaintiff.

67. Upon information and belief, Defendant is responsible for establishing the policies and procedures to be utilized in the operation of the county facility and is responsible for the implementation of the unreasonable strip search policy questioned in this lawsuit. As such, Defendant is responsible for the damages of the Plaintiff.

68. Upon information and belief, Defendant knew of the unreasonable strip search policies of the MDCDF and acquiesced in strip searches conducted pursuant to these policies. Defendant's failure to take action with respect to these policies was the moving force behind the violations of the constitutional rights of Plaintiff. By maintaining and/or acquiescing in the Illegal Strip Search

Practice or Policy, Defendant was deliberately indifferent to the risk of constitutional injury to the Plaintiff.

69. This conduct on the part of the Defendant represents a violation of 42 U.S.C. § 1983, given that its unlawful actions were undertaken under color of state law.

## COUNT II
## NEGLIGENCE

70. This count is being plead in the alternative to, and in addition to, Count I, and only to the extent that Defendant CoreCivic and/or its agents are considered to be afforded any sovereign immunity defenses.

71. Defendant had a duty to act reasonably under the circumstances.

72. Defendant breached this duty by, inter alia, subjecting Plaintiff its Illegal Strip Search Practice or Policy.

73. Defendant breached a duty owed to Plaintiff under its Policy Number 3-15.

74. Plaintiff was injured as a direct and proximate cause of Defendant's negligence, and as a result of being subjected to Defendant's Illegal Strip Search Practice or Policy.

75. The injuries suffered by Plaintiff were reasonably foreseeable.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

76. This count is being plead in the alternative to, and in addition to, Count I, and only to the extent that Defendant CoreCivic and/or its agents are considered to be afforded any sovereign immunity defenses.

77. Defendant's conduct of requiring Plaintiff to submit to an unreasonable strip search was extreme and outrageous.

78. Defendant's conduct of requiring Plaintiff to submit to a drug test four days after subjecting her to an unreasonable strip search was extreme and outrageous and was done in an attempt to justify the unreasonable strip search of the Plaintiff.

79. Defendant's conduct of requiring Plaintiff to submit to a drug test four days after subjecting her to an unreasonable strip search was also done to harass, humiliate and degrade Plaintiff and to cause her emotional pain and suffering.

## COUNT IV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

80. This count is being plead in the alternative to, and in addition to, Count I, and only to the extent that Defendant CoreCivic and/or its agents are considered to be afforded any sovereign immunity defenses.

81. Defendant had a contractual or fiduciary duty toward Plaintiff.

82. Plaintiff suffered a physical impact as a result of Defendant's conduct described herein.

83. Plaintiff was in a "zone of danger" and at risk of an immediate physical and/or emotional injury as a result of Defendants' conduct described herein.

84. Defendants owed a duty of care to the Plaintiff.

85. Defendant breached that duty.

86. The breach resulted in injury to Plaintiff.

87. Plaintiff has suffered an actual loss or damage.

## DEMAND FOR PUNITIVE DAMAGES

88. The actions of the Defendant detailed herein are intentional, reckless, malicious and outrageous, in that they constitute an unreasonable strip search in the face of numerous court decisions declaring such practices unlawful. The actions of the Defendant were undertaken with reckless disregard and callous indifference to the Fourth and Fourteenth rights of Plaintiff.

## DEMAND FOR TRIAL BY JURY

89. Plaintiff hereby demands a trial by jury.

PRAYER FOR RELIEF WHEREFORE, Plaintiff respectfully request that this Court grant them the following relief:

A. A judgment against Defendant on Plaintiff's causes of action detailed herein, awarding compensatory damages and punitive damages to Plaintiff in an amount to be determined at trial;

B. A monetary award for attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988 and other applicable fee shifting statutes and principals; and

C. Any other general and specific relief which this Court deems appropriate.

Respectfully Submitted,

**THE JOHNSON LAW FIRM**

___*James B. Johnson*_____
**James B. Johnson,** Sup. Ct. No. 15509
1506 Church Street, Suite 3
Nashville, Tennessee 37023
P: 615-476-2885
attorneyjamesbjohnson@gmail.com